UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA

DIGITAL SIN, INC.

    Plaintiff,

    v.                                     No. 4:11-cv-583

DOES 1 - 208

    Defendants.
_____/

## DOE DEFENDANT 57'S MOTION TO SEVER DEFENDANTS AND QUASH SUBPOENA AND INCORPORATED MEMORANDUM OF LAW

Doe Defendant 57 ("Defendant 57") respectfully moves this Court, pursuant to Rules 12, 20, and 21, Federal Rules of Civil Procedure, to enter an Order severing Defendant 57 and quashing Plaintiff Digital Sin, Inc's ("Plaintiff") subpoena of Comcast Cable, and in support thereof submits this Incorporated Memorandum of Law. As will be more fully detailed below, this Motion should be granted because:

1. Joinder of Defendant 57 with the other 207 unnamed Doe Defendants is not proper in this case under Rule 20, Federal Rules of Civil Procedure;

2. Pursuant to Rule 21, Federal Rules of Civil Procedure, this Court should sever the case against Defendant 57 from the other 207 Doe Defendants and dismiss the action against Doe Defendants 2 through 208; and

3. Plaintiff has not pled sufficient facts to support personal jurisdiction over Defendant 57.

# INTRODUCTION

Plaintiff filed this action against 208 Doe Defendants alleging copyright infringement of a pornographic movie. A search on PACER reveals that Plaintiff has filed thirteen (13) such cases in federal courts from September 2011 through January 2012, against more than 7,404 Doe defendants. It is this behavior that has earned entities that employ such tactics the label "copyright trolls."[1] Copyright trolls bring copyright infringement claims related to pornographic movies against mass groups of "Doe" defendants with the intent to leverage defendants' aversion to being publicly linked with pornography in order to force favorable settlements. The plaintiff's tactic was clear to the Court in SBO Pictures, which recently stated:

> [T]he Court is concerned that Plaintiff's motive for seeking joinder of over three thousand Doe Defendants in one action may be precisely to coerce . . . settlements. As Plaintiff's counsel surely knows, trial of a suit with thousands of individual defendants would present unmanageable difficulties. The vast majority of these mass copyright infringement suits are resolved through settlement once the plaintiff secures the information identifying the Does.

SBO Pictures, Inc. v. Does 1-3036, No. 11-4220 SC, 2011 WL 6002620, at *3-4 (N.D. Cal. Nov. 30, 2011) (internal citations omitted). By joining hundreds of Doe defendants in one complaint and paying a single filing fee, copyright trolls attempt to get access to hundreds of defendants for a fraction of the cost of filing separate lawsuits. Obtaining the identity of the defendants is the critical juncture of the case. Once the copyright troll has the defendants' identities, it can contact the defendants directly to leverage settlement.

While some copyright trolls have had some success, many judges are now voicing concerns about these attempts to stretch the boundaries and concepts of joinder and personal

---

[1] See e.g., "Copyright Trolls," Electronic Frontier Foundation, https://www/eff.org/issues/copyright-trolls.

jurisdiction. As a federal court for the Northern District of Illinois recently stated in dismissing a case:

> [I]f the 300 unnamed defendants have in fact infringed any copyrights (something that this court will assume to be the case, given the Complaint's allegations that so state), each of those infringements was separate and apart from the others. No predicate has been shown for thus combining 300 separate actions on the cheap – if CP had sued the 300 claimed infringers separately for their discrete infringements, the filing fees alone would have aggregated $105,000 rather than $350.

CP Productions, Inc. v. Does 1-300, No. 10 C 6255, 2011 WL 737761 at *1 (N.D. Ill. February 24, 2011). Later, the court added:

> This Court has received still another motion by a "Doe" defendant to quash a subpoena in this ill-considered lawsuit filed by CP Productions, Inc. ("CP") against no fewer than 300 unidentified "Doe" defendants . . . . This Court's February 24, 2011 memorandum opinion and order has already sounded the death knell for this action, which has abused the litigation system in more than one way. . . . [At the next hearing] Counsel will be expected to discuss what steps should be taken to apprise all of the targeted "Doe" defendants that they will not be subject to any further trouble or expense as a result of this ill-fated (as well as ill-considered) lawsuit.

CP Productions, Inc. v. Does 1-300, No. 10 C 6255, Statement of March 2, 2011 (available at http://law.justia.com/cases/federal/district-courts/illinois/ilndce/1:2010cv06255/248010/33/).

Another federal court in Illinois denied a motion for expedited discovery and stated: "[t]he court has no jurisdiction over any of the Does at this time; the imprimatur of this court will not be used to advance a 'fishing expedition by means of a perversion of the purpose and intent' of class actions." VPR Internationale vs. Does 1-1017, No. 11-2068 (C.D. Ill. Apr. 29, 2011) (http://docs.justia.com/cases/federal/district-courts/illinois/ilcdce/2:2011cv02068/51489/15/). (quoting the court's earlier order denying expedited discovery).

One federal court in Virginia even scheduled a Rule 11 hearing regarding the tactics of plaintiff's counsel. The Raw Films court stated:

3

> The Court also finds that the plaintiff should be required to show cause why certain conduct does not violate Rule 11 of the Federal Rules of Civil Procedure. The Court currently has three similar cases before it, all brought by the same attorney . . . . In all three, the plaintiffs sought, and the Court granted, expedited discovery allowing the plaintiffs to subpoena information from ISPs to identify the Doe defendants. According to some of the defendants, the plaintiffs then contacted the John Does, alerting them to this lawsuit and their potential liability. Some defendants have indicated that the plaintiff has contacted them directly with harassing telephone calls, demanding $2,900 in compensation to end the litigation . . . .
>
> The plaintiffs seemingly have no interest in actually litigating the cases, but rather simply have used the Court and its subpoena powers to obtain sufficient information to shake down the John Does. Whenever the suggestion of a ruling on the merits of the claims appears on the horizon, the plaintiffs drop the John Doe threatening to litigate the matter in order to avoid the actual cost of litigation and an actual decision on the merits.
>
> The plaintiffs' conduct in these cases indicates an improper purpose for the suits. In addition, the joinder of unrelated defendants does not seem to be warranted by existing law or a non-frivolous extension of existing law.

Raw Films, Ltd., v. John Does 1-32, No. 3:11cv532-JAG, 2011 WL 6182025 at *2-3 (E.D. Va. Oct. 5, 2011).

## FACTS

Plaintiff filed this action against 208 unknown Doe Defendants because Plaintiff only has a list of Internet Protocol ("IP") addresses, not the names of potential defendants. See Complaint at ¶ 7. An IP address is assigned to an internet connection, not an individual person. There is no way to be certain who may have actually used the IP address to access the material in question. The IP address does not identify who was using the internet connection. It does not distinguish between a parent and a minor in the same home; between roommates; or between residents and guests. Furthermore, anyone within range of an unsecured wireless internet connection could be potentially linked to an IP address, including neighbors within range of a wireless connection. The IP address does not identify what device was connected to the internet. It does not

4

distinguish between a desktop, laptop, iPad, iPhone, Blackberry, or any other device capable of an internet connection.

Plaintiff alleges that the Doe Defendants used "torrent technology" to download or upload a copyrighted pornographic movie. See Complaint at ¶¶ 9-13. A torrent is a type of peer to peer ("P2P") network whereby one "file - provider decides to share a file ("seed") with a torrent network. Then other users ("peers") within the network connect to the seed file for downloading. As additional peers request the same file, they become part of the same network." See Complaint at ¶ 9. The peers both download and upload from one another and "[t]his system of multiple pieces of data coming from peers is called a 'swarm.'" See Complaint at ¶ 9. While exchanging data with peers may appear complicated, the torrent software that handles this operation can be downloaded for free and users may search for files about as easily as running a Google search.

Plaintiff alleges that "[e]ach Defendant has acted in cooperation with the other Defendants by agreeing to provide, and actually providing, on a P2P network an infringing reproduction of at least substantial portions of Plaintiff's copyrighted Motion Picture . . . ." See Complaint at ¶ 22. Yet, aside from this unsupported legal conclusion, Plaintiff provides no facts to support this allegation that the Doe Defendants all "cooperated" with each other. Indeed, the Complaint's Exhibit "A" actually contradicts the conclusory allegation of "cooperation" among the Doe Defendants. One Doe Defendant in this case, Doe Defendant 11, allegedly interacted with the swarm on October 1, 2011, and Doe Defendant 10 allegedly interacted with the swarm a month later, on November 1, 2011, with the rest of the Doe Defendants scattered somewhere in between that time span. Since it is unlikely to take anywhere close to a month to download a

5

file, the allegation supporting joinder that each of the 208 defendants cooperated with the others is implausible at best.

Plaintiff's factual allegations to support jurisdiction fare no better. Plaintiff has isolated 208 Doe Defendants out of the *worldwide* swarm and "has *attempted to ensure* that the IP addresses are likely within the geographic location of the court." See Complaint at ¶ 4. (emphasis added). But Plaintiff does not allege that *all* of the Defendants are *in fact* within the jurisdiction of the Court. Indeed, this geographic distinction (the Northern District of Florida) is artificial, made solely for the purposes of litigation. Neither internet users nor their computer software make this geographic distinction. Two peers on a swarm that both live in Tallahassee, Florida are no more or less likely to share data with each other than with a peer living in Tokyo, Japan. Again, the allegations are inadequate to state plausible facts to support the allegations of jurisdiction over each of the 208 defendants.

"Plaintiff states that information obtained in discovery will lead to the identification of each Defendants' true names and addresses and will permit Plaintiff to amend this Complaint to state the same." See Complaint at ¶ 7. Toward this end, Plaintiff has issued a Subpoena to Comcast Cable, Defendant's Internet Service Provider, requesting disclosure of Defendant's identifying information. But this puts the cart before the horse and proves the point that the Plaintiff is attempting to use this court to provide it with an inexpensive mechanism to investigate its possible claims by joinder of hundreds of unrelated claims in a single action without any plausible connection to each other and with no assurance that the court has jurisdiction over any of the claims.

## **MEMORANDUM OF LAW**

### I. DEFENDANT 57 SHOULD BE SEVERED FOR MISJOINDER

Defendant 57 has been improperly joined and should be severed from this action. A plaintiff may join defendants if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences;

> and

> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). Plaintiff must satisfy *both* prongs of Rule 20(a)(2). In this case, Plaintiff cannot satisfy either prong. As a result of this improper joinder, the Court should sever the claims against each Doe Defendant pursuant to its authority under Rule 21, Federal Rules of Civil Procedure. Alternatively, even if Plaintiff can satisfy the technical requirements of Rule 20(a)(2), the Court should sever Doe Defendants 2 through 208 pursuant to its discretionary authority under Rule 20(b), Federal Rules of Civil Procedure.

#### A. Plaintiff Cannot Show that Doe Defendants Acted In Concert

Plaintiff alleges that "[e]ach Defendant has acted in cooperation with the other Defendants by agreeing to provide, and actually providing, on a P2P network an infringing reproduction of at least substantial portions of Plaintiff's copyrighted Motion Picture . . ." using torrent technology. See Complaint at ¶¶ 9, 22. Prior to torrent technology, courts had reached a consensus that users connected by a P2P network could not be joined as defendants. See Hard Drive Prods, 2011 WL 3740473 at *7-9 (citing Laface Records, LLC. v. Does 1–38, No. 5:07-CV-298-BR, 2008 WL 544992, at *1 (E.D.N.C. Feb. 27, 2008); Interscope Records v. Does 1-25, No. 6:04-cv-197-Orl-22DAB, 2004 U.S. Dist. LEXIS 27782, at *2, *19 (M.D. Fla. Apr. 1,

2004); Elektra Entertainment Group, Inc. v. Does 1–9, No. 04 Civ. 2289(RWS), 2004 WL 2095581, at *1 (S.D.N.Y. Sept. 8, 2004); Fonovisa, Inc. v. Does 1–9, No. 07-1515, 2008 WL 919701 (W.D. Pa. Apr. 3, 2008)). Plaintiffs in those P2P cases could not join the defendants because they could not show that "defendants . . . acted in concert." Fonovisa, Inc., 2008 WL 919701 at *5. The courts concluded that "merely committing the same type of violation in the same way does not link defendants together for purposes of joinder." Laface Records, LLC., 2008 WL 544992, at *1. With the advent of torrent technology, plaintiffs have been able to persuade some courts that torrent technology changes the joinder analysis. But, as will be demonstrated below, torrent technology does not resolve the inherent problems with joining defendants who allegedly used P2P technology, and accordingly, the Doe Defendants should not be joined in this case.

The 208 Doe Defendants in this case were not involved in "the same transaction, occurrence, or series of transactions or occurrences" as required for joinder under Rule 20 because it is not plausible that they acted in concert with one another. As the Complaint reveals, the 208 Doe Defendants each interacted with the swarm at different times over the course of a month. See Complaint, Exhibit A. Without accessing the swarm at the same time, or nearly the same time, it is simply implausible, if not impossible, that the 208 Doe Defendants each acted in concert with all of the others as alleged.[2] As stated in Hard Drive Productions:

> [E]ven if the IP addresses at issue in this motion all came from a single swarm, there is no evidence to suggest that each of the addresses 'acted in concert' with all of the others. In fact, the nearly six-week span covering the activity associated with each of the addresses calls into question whether there was ever common activity linking the 51 addresses in this case . . . . [I]t is difficult to imagine, let alone believe, that an alleged infringer of the copyrighted work would patiently

---

[2] While the Complaint here alleges that, "the 208 Doe Defendants in this case "acted in cooperation," as will be explained below, other courts have found that such allegations are insufficient to satisfy the "same transaction or occurrence" requirement of Rule 20.

8

wait six weeks to collect the bits of the work necessary to watch the work as a whole.

Hard Drive Prods, 2011 WL 3740473 at *13; see Raw Films, Ltd., v. John Does 1-32, No. 3:11cv532-JAG (E.D. Va. Oct. 5, 2011) (holding that defendants did not act in concert where the defendants allegedly acted on different days and times over a three month span which was "insufficient to meet the standards of joinder set forth in Rule 20."); see also Digital Sin, Inc., v. Does 1-5698, No. C 11-04397 LB, 2011 WL 5362068, at *3 (N.D. Cal. Nov. 4, 2011) (denying joinder where "defendants downloaded the protected work at various dates and times ranging from April to August 2011.").

In Diabolic Video, the plaintiff alleged in its complaint language that is nearly identical to what the Plaintiff in the present case alleged. In that case, the plaintiff alleged that the defendants "acted in cooperation with one another 'by agreeing to provide, and actually providing on a P2P network, an infringing reproduction' of the copyrighted video." See Diabolic Video Productions v. Does 1–2,099, No. 10-CD-5865-PSG, 2011 WL 3100404 at *3 (N.D. Cal. May 31, 2011). The plaintiff in that case, just as Plaintiff has done here, relied upon the declaration of Jon Nicolini regarding common hash tags joined in a swarm, arguing that this satisfies the requirements of Rule 20 joinder under the Federal Rules of Civil Procedure. The Diabolic Video Court rejected that theory and held that:

> This court and others, however, have repeatedly held that the mere allegation that defendants have used the same peer-to-peer network to infringe a copyrighted work is insufficient to meet the standards for joinder set forth in Rule 20. Apart from its lone allegation that Defendants all used the same P2P network to reproduce and distribute [Plaintiff's] copyrighted work, [Plaintiff] offers no allegations whatsoever to support its theory of a single or closely-related transactional theory."

Id.

Not only did each of the 208 Doe Defendants in this case interact with the swarm at different times over a month rather than directly with one another, but to the extent that any Doe Defendants interacted with any other peers in the swarm, they may have only interacted with one and not any of the others. And it is equally plausible that any one of the defendants interacted with one or more of potentially thousands of *other* peers who are *not* defendants in this case. The 208 Doe Defendants here represent a small geographic subset of the worldwide peers on the swarm. The user does not choose his peers in a swarm and a user may just as likely be matched to a peer around the world as matched to a peer around the block. Plaintiff has grouped the 208 Doe Defendants arbitrarily in an attempt to satisfy jurisdictional requirements of litigation, not because these particular 208 peers are any more or less likely to have interacted with one another than any other peers in the swarm. As the Hard Drive Productions Court aptly explained:

> Any "pieces" of the work copied or uploaded by any individual Doe may have gone to any other Doe *or to any of the potentially thousands who participated in a given swarm.* The bare fact that a Doe clicked on a command to participate in the BitTorrent Protocol does not mean that they were part of the downloading by unknown hundreds or thousands of individuals across the country or across the world.

Hard Drive Prods, 2011 WL 3740473 at *13 (emphasis in original). Similarly, the MCGIP court denied joinder where the plaintiff could not specifically show concerted action among Doe Defendants:

> [E]ven assuming that the Doe defendants in this case entered the same swarm and downloaded the same seed file, MCGIP has failed to show that any of the 149 Doe defendants actually exchanged any piece of the seed file with one another. MCGIP's amended complaint attempts to address this issue by alleging that "[t]he Defendants were collectively engaged in the conspiracy even if they were not engaged in the swarm contemporaneously because they all took concerted action that contributed to the chain of data distribution." Here, the alleged "chain of data distribution" spans 149 defendants, 14 different ISPs, and 36 separate days between March 28, 2011 and May 11, 2011. . . . Joinder is inappropriate.

MCGIP, LLC v. Does 1-149, C 11-02331 LB, 2011 WL 4352110 at * 3 (N.D. Cal. Sept. 16, 2011) (internal citations omitted). Because it is implausible that the 208 Doe Defendants in this case worked in concert, due to the fact that they accessed the swarm at far different times over a month and may not have interacted with one another at all, the Doe Defendants cannot be properly joined.

The Court should not accept as true Plaintiff's allegation that "each Defendant has acted in cooperation with the other Defendants" because it is both conclusory and implausible. "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1950 (2009). Because the statement is a pure legal conclusion, the Court does not have to accept the statement as true. Furthemore, the statement is implausible, and therefore the Court should not accept the conclusion as true. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). Twombly and Iqbal apply to pleadings of intent as well as conduct. Kiobel v. RoyalDutch Petroleum Co., 621 F.3d 111, 191 (2d Cir. 2010) (citing Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1954 (U.S. 2009)). Plaintiff's allegation of ongoing cooperation among each of the 208 Defendants is undermined by the other facts pled; namely that different defendants interacted with the swarm at different times over the course of a month. There was no technical need for any Doe Defendant in this case to cooperate with any other Doe Defendant in this case. The allegation that the defendants "acted in cooperation" and were part of "the same transaction, occurrence, or series of transactions or occurrences" is simply not plausible. In light of the Complaint's implausible conclusory allegations regarding cooperation among defendants, severance of the Defendants is appropriate.

### B. The Court had Discretion to Deny Permissive Joinder

"Since joinder is permissive in character, there is 'no requirement that the parties must be joined,' particularly where joinder would 'confuse and complicate the issues for all parties involved' rather than make the resolution of the case more efficient." On the Cheap, LLC, v. Does 1-5011, No. C10-4472 BZ, 2011 WL 4018258 at *2 (N.D. Cal. Sept. 6, 2011) (internal citations omitted). Additionally, "the Court is required to 'examine whether permissive joinder would comport with the principles of fundamental fairness or would result in prejudice to either side.'" Id. When evaluating fundamental fairness, courts may consider factors such as "the motives of the party seeking joinder." Digital Sin, Inc., 2011 WL 5362068 at *3 (citing Desert Empire Bank v. Ins. Co. of N. Am., 623 F.2d 1371, 1375 (9th Cir. 1980). As will be shown below, in this case, joinder would not make the resolution of the case more efficient and it would unfairly and unreasonably prejudice the Doe Defendants by denying them Due Process.

Plaintiff admits that it knows only the identity of an IP address: an internet connection, not a person. This is problematic because, as one court noted, "Comcast subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiff's works. John Does 3 through 203 could be thieves, just as Plaintiffs believe." Third Degree Films v. Does 1–3577, No. C 11–02768 LB, 2011 WL 5374569, at *4 (N.D. Cal. Nov. 4, 2011). "By defining Doe Defendants as ISP subscribers who were assigned certain IP addresses, instead of the actual Internet users who allegedly engaged in infringing activity, 'Plaintiff's sought-after discovery has the potential to draw numerous innocent internet users into the litigation, placing a burden upon them that weighs against allowing the discovery as designed.'" SBO Pictures, Inc., 2011 WL 6002620 at *3 (internal citations omitted).

Not only does joining so many Doe Defendants together put a heavy burden on innocent defendants, but it would undermine, not promote, trial efficiency. Even though each of the Doe Defendants' behavior might be facially similar, they would each likely present different defenses. BMG Music v. Does 1–203, No. Civ.A. 04–650, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004); On the Cheap, LLC, 2011 WL 4018258 at *2; Hard Drive Prods, 2011 WL 3740473 at *14-15 ("[P]ermitting joinder would force the Court to address the unique defenses that are likely to be advanced by each individual Defendant, creating scores of mini-trials involving different evidence and testimony . . . . [T]he Court also notes that . . . there are listed at least thirteen different internet service providers associated with Doe Defendants, which could also give rise to different ISP-specific defenses, evidence, and testimony."); Fonovisa, Inc., 2008 WL 919701 at *5 ("[S]ince the claims against the different Defendants most likely will involve separate issues of fact and separate witnesses, different evidence, and different legal theories and defenses, which could lead to jury confusion, separate trials will be required for each Defendant.").

Joining 208 Defendants would not only be inefficient, but would also pose a substantial logistical obstacle. This Court would need to find a court room large enough to hold 208 defendants. On the Cheap, LLC, 2011 WL 4018258 at *2; Hard Drive Prods. Inc., 2011 WL 3740473 at *19. All litigants would have to be able to serve motions one all other litigants, something that would be especially difficult because there are likely to be many pro-se defendants who would not e-file. Hard Drive Prods. Inc., 2011 WL 3740473 at *19. Managing discovery would be a monumental undertaking. Id. (stating as an example that "[e]ach defendant would have the right to be at each other defendant's deposition - creating a thoroughly unmanageable situation.") Id. The Court would need to be able to manage case management

conferences with hundreds of litigants. Bridgeport Music, Inc. v. 11 C Music, 202 F.R.D. 229, 232–33 (M.D.Tenn. 2001) The Court and each party would need to read and respond to an enormous volume of motions that would likely be filed. Hard Drive Prods., Inc., 2011 WL 3740473 at *19. And one can only imagine the logistical problems and manifest jury confusion that would result from a trial of 208 different and unrelated defendants each with their own set of witnesses. No jury could be reasonably expected to keep track of all such evidence and render a fair verdict to each defendant under such circumstances. "These burdens completely defeat any supposed benefit from the joinder of all Does in this case, and would substantially prejudice defendants and the administration of justice." Id.

In contrast, by severing the Doe Defendants, Plaintiff would not be unduly prejudiced. SBO Pictures, Inc, 2011 WL 6002620 at *4 (N.D. Cal. Nov. 30, 2011). The three-year statute of limitations will not have run, and Plaintiff can file individual suits if it chooses. Id. Defendant 57 only asks this Court to require Plaintiff to not join him with disconnected and unrelated defendants and that Plaintiff be required to pursue the Doe Defendants individually, in accordance with applicable law.[3]

## II. THE SUBPOENA SHOULD BE QUASHED BECAUSE PLAINTIFF HAS NOT ESTABLISHED THAT THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANT

Plaintiff's proposed subpoena to Comcast Cable should be quashed because Plaintiff has not established that this Court has personal jurisdiction over Defendant 57. In order for the Court to have personal jurisdiction under the Due Process Clause of the Fourteenth Amendment, Plaintiff must demonstrate that: (1) the non-resident "has minimum contacts with the forum" and

---

[3] Plaintiff is a commercial enterprise with far greater financial resources than the individual defendants and requiring it to expend the funds to file individual lawsuits will not impair its ability to enforce any legitimate copyright infringement claims.

14

(2) "requir[ing] the defendant to defend its interests in that state does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-77 (1985). Plaintiff bears the burden of alleging sufficient facts for the Court to exercise personal jurisdiction over the Defendants. See, e.g., Edmond v. United States Postal Serv. Gen. Counsel, 949 F.2d 415, 424 (D.C. Cir. 1991). To accomplish this, Plaintiff claims that it needs jurisdictional discovery. However, "'in order to get jurisdictional discovery[,] a plaintiff must have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant.' Furthermore, it is well within the court's purview under Rule 26 to impose reasonable limitations on discovery when "the burden or expense of the proposed discovery outweighs its likely benefit." SBO Pictures, Inc. v. Does 1-87, no. 11-1962 (JDB/JMF), 2012 WL 177865 at *1 (D.D.C. Jan. 19, 2012) (internal citations omitted).

Plaintiff directs the Court to the Declaration of Jon Nicolini ("Nicolini Declaration") (attached to the Complaint as Exhibit B) to show that Plaintiff has a good faith belief that discovery will allow it to show personal jurisdiction over the defendants. See Complaint at ¶ 3-4; Memorandum of Points and Authorities in Support of Plaintiff's Motion for Leave to Take Discovery Prior to Rule 26(f) Conference ("Discovery Motion"). The Nicolini Declaration states "we have limited the geographic search to ensure as much as technically possible that the alleged infringers are in fact within the geographic area of the court. However, because of intermediary ISPs and the location of the ISPs technical facilities, the location cannot always be exactly pinpointed." Nicolini Declaration at ¶ 25. In the very recent case Exquisite Multimedia, the plaintiff also used a declaration from Jon Nicolini which the court found insufficient to find a good faith belief that discovery will show personal jurisdiction over the defendants:

15

> [P]laintiff claims that "[b]y using geo-location techonology (sic), [it] has attempted to assure that the IP addresses are likely within the geographic location of the Court." Although plaintiff supports this claim with a *Verification* from plaintiff's counsel and a *Declaration* from Jon Nicolini, the Vice President of Technology for Copyright Enforcement Group, LLC ("CEG"), plaintiff fails to state with specificity what it believes to be the "geographic location of the Court" nor does it provide any information as to the geographic regions served by the various ISPs (Verizon Internet Services, Comcast Cable, and Cox Communications) identified in its pleadings as having provided service to the alleged infringers. The Court, therefore, will order plaintiff to briefly supplement its showing regarding its good faith belief that the IP addresses identified by plaintiff belong to persons who are domiciled in the District of Columbia and that the ISPs identified by plaintiff serve the District of Columbia.

Exquisite Multimedia, Inc. v. Does 1-336, No: 11-1976 (RWR/JMF), 2012 WL 177885 at *3 (D.D.C. Jan. 19, 2012). The facts of Exquisite Multimedia are nearly identical to the present case. Here, Plaintiff did not state with specificity what it believes to be the geographic jurisdiction of the Court. Plaintiff did not provide information regarding the geographic regions served by the various Internet Service Providers. Mr. Nicolini claims he used geo-location technology, but admits that even with such technology, location cannot be pinpointed. Nicolini Declaration at ¶ 25. In order to establish a claim of personal jurisdiction, Twombly and Iqbal require Plaintiff to establish a claim of personal jurisdiction that is plausible on its face. C.R. Daniels, Inc. v. Naztec Int'l Grp., LLC, No. ELH-11-01624 2011 WL 6026293 at *3 (D. Md. Dec. 2, 2011). Plaintiff has not alleged sufficient facts to state a plausible basis to support its jurisdictional allegations. Nor has Plaintiff demonstrated any other sufficient grounds for a good faith belief that discovery will show personal jurisdiction over Doe Defendant 57, and consequently the Court should quash the subpoena.

## CONCLUSION

For all the foregoing reasons, the Court should enter an Order severing the claims against

each of the 208 Doe Defendants and quashing Plaintiff Digital Sin, Inc's subpoena of Comcast Cable.

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 7.1(B), the undersigned counsel for Defendant certifies that he conferred with counsel for Plaintiff in a good faith effort to resolve the issues raised by this Motion, and counsel for Plaintiff advised that he is opposed to this Motion

HOLLAND & KNIGHT LLP

/s/ Jerome W. Hoffman
Jerome W. Hoffman
Florida Bar No. 0258830
jerome.hoffman@hklaw.com
Holland & Knight LLP
315 South Calhoun Street, Suite 600
Tallahassee, Florida 32301-1809
Tel:    850-224-7000
Fax:    850-224-8832

**Attorney for Defendant DOE 57**

## CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2012, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

/s/ Jerome W. Hoffman
Attorney